```
 1                   UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
                CASE NO. 16-23775-CIVIL-MORENO/TURNOFF
 3

 4    ALYDA R. CHIMENE,                 Miami, Florida

 5               Plaintiff,             July 27, 2017

 6         vs.                          2:22 p.m.

 7    ROYAL CARIBBEAN CRUISES, LTD.,
      MC TOURS, GRUPO PALMAS, S.A.,
 8    CARIBE SKY CANOPY TOUR,

 9               Defendants.            Pages 1 to 22
      _____
10

11                        MOTION HEARING
             BEFORE THE HONORABLE WILLIAM C. TURNOFF,
12                 UNITED STATES MAGISTRATE JUDGE
             (TRANSCRIBED FROM THE DIGITAL AUDIO RECORDING)
13
      APPEARANCES:
14

15    FOR THE PLAINTIFF:        KEITH S. BRAIS, ESQ.
                                BRAIS & ASSOCIATES, P.A.
16                              9300 South Dadeland Boulevard
                                Suite 101
17                              Miami, Florida 33156

18
      FOR THE DEFENDANT         CARLOS J. CHARDON, ESQ.
19      ROYAL CARIBBEAN:        HAMILTON, MILLER & BIRTHISEL, LLP
                                150 Southeast Second Street
20                              Suite 1200
                                Miami, Florida 33131
21

22    TRANSCRIBED BY:          LISA EDWARDS, RDR, CRR
                               Official Court Reporter
23                             United States District Court
                               400 North Miami Avenue
24                             Twelfth Floor
                               Miami, Florida 33128
25                             (305) 523-5499
```

```
 1              THE COURT:  Chimene versus RCCL, et al., Case No.

 2    16-23775-Judge Moreno.

 3              Appearances, please.

 4              MR. BRAIS:  Keith Brais, your Honor, on behalf of the

 5    Plaintiff.

 6              MR. CHARDON:  Carlos Chardon on behalf of Royal

 7    Caribbean.

 8              THE COURT:  All right.  I'm aware of the -- everything

 9    we have before us.

10              In the meantime, Judge Scola signed two orders for

11    Judge Moreno.  Have you seen those orders?

12              MR. BRAIS:  I saw one order --

13              THE COURT:  Just one?

14              THE LAW CLERK:  Yes.

15              MR. BRAIS:  -- addressing two motions.

16              THE COURT:  It was the one order addressing two

17    motions.  Okay.  Has everybody seen that?

18              MR. BRAIS:  Yes, your Honor.

19              MR. CHARDON:  Yes, Judge.

20              THE COURT:  So, quite frankly, the only thing that's

21    left before me is regarding the extension of time to respond to

22    the motion for summary judgment.  This is Plaintiff's motion

23    for enlargement of time to file a response to Defendants'

24    motion for summary judgment.  Correct?

25              MR. BRAIS:  Correct, Judge.
```

1          THE COURT:  Okay.  And the only problem I have is

2     there's a trial date on October 30, 2017.

3          MR. BRAIS:  Correct.

4          THE COURT:  So -- and Defendant really doesn't object

5     to an extension.  It's a question of how much time you need and

6     looking at the trial date.  So let me hear from counsel for

7     Plaintiff.

8          MR. BRAIS:  Good afternoon, Judge.  Keith Brais.

9          THE COURT:  As I say, counsel for Plaintiff.

10         MR. BRAIS:  Judge, there are four --

11         THE COURT:  You can sit down.  And you can step over to

12    the microphone.  Step over to this microphone.

13         MR. BRAIS:  Okay, Judge.  Thank you.

14         So there are four issues, Judge, I just want to very

15    briefly bring to your attention, and some of which I bring them

16    to your attention because I think we may have worked something

17    out timing-wise.

18         And you're right:  Counsel doesn't -- for the defense

19    doesn't necessarily -- doesn't disagree that the additional

20    time's needed.

21         So the Plaintiff has not yet been provided -- you

22    ordered that the Plaintiff be provided access to the zip line

23    to accomplish an inspection at the zip line.  You ordered that,

24    Judge.

25         We received word that the MC Tours -- and I wasn't

```
 1    personally involved in this, so if I misstate anything, please

 2    correct me, counsel -- that the zip line company has no

 3    interest in our going there.

 4          So -- and I think you said that due diligence or best

 5    efforts should be used with the cruise line.

 6          So I went back, Judge, and I took a look at their

 7    undisputed facts in the motion for summary judgment.  And I

 8    could read it to the Court.  But it says -- actually, it's

 9    worth reading.  It says that "The cruise line pursuant to the

10    contract with the shoreside concessionaire has the absolute

11    right in an unannounced fashion to visit the shore excursion

12    company zip line as a, quote, 'secret shopper' for purposes

13    that it might deem appropriate in this particular case."  And

14    the instance cited in their own record was to ensure customer

15    satisfaction.  Okay.

16          So my comment to counsel was:  Well, maybe MC Tours

17    doesn't want us there.  But you have the absolute right to go

18    there anytime you please.  We can accompany you.  My expert can

19    do --

20          THE COURT:  By zip line?

21          MR. BRAIS:  What's that, Judge?

22          THE COURT:  By zip line?

23          MR. BRAIS:  Well, I don't know about flying through the

24    air.

25          THE COURT:  Well, how do they get there?
```

```
 1              MR. BRAIS:  Oh, well, the ship pulls into port.  They
 2    get on a van.  They end up at a location.  So I did call --
 3              THE COURT:  In other words, you don't have to go, like,
 4    to the zip line to get to the location.  You can go right to
 5    the -- where the injury occurred.  Right?
 6              MR. BRAIS:  Well, you could meet the ship and the van
 7    takes --
 8              THE COURT:  It could take you to the --
 9              MR. BRAIS:  -- the cruise line people.
10              THE COURT:  To the location where the accident
11    occurred?
12              MR. BRAIS:  And it can happen.
13              THE COURT:  And you just go up.  Right?
14              MR. BRAIS:  And you go up.  And you can do that.  So
15    that would be one problem solved.  But it hasn't been solved.
16              THE COURT:  I understand.  They could go there as a
17    secret plaintiff.
18              MR. BRAIS:  A secret shopper/plaintiff.
19              But I think the point --
20              THE COURT:  Well, when they get up there, the people
21    are not cooperative.  They just don't want to use the zip line;
22    they want to look around.  Right?
23              MR. BRAIS:  They want to look -- they want to look
24    around.  One of the tests -- I just called my expert.  I said:
25    Listen, can you basically do this under a secret shopper sort
```

 1    of a scenario?  You know, don't be taking out, you know,

 2    every --

 3              THE COURT:  I don't want to get off in the woods here.

 4              MR. BRAIS:  Yeah.

 5              THE COURT:  But didn't your client just withdraw the --

 6    doesn't it have any kind of rights to deal with -- you know,

 7    the zip lines get a lot of money from your client.

 8              MR. BRAIS:  His client.

 9              THE COURT:  Huh?

10              MR. BRAIS:  The Defendant's client.  Correct.

11              THE COURT:  Again, I'm getting dyslexia.  I'm awfully

12    sorry.

13              MR. BRAIS:  No worries.

14              THE COURT:  You just look like a defendant's lawyer.

15              MR. CHARDON:  He was.

16              THE COURT:  There we are.  Okay.

17              MR. BRAIS:  Very conservative.

18              THE COURT:  You're the Plaintiff.

19              So now does the -- you're saying the Defendant said --

20    the Defendant's lawyer said that the zip line will not

21    cooperate in an inspection.  Is that correct?

22              MR. CHARDON:  I could clarify.

23              THE COURT:  Yeah.  Clarify that, because that's really

24    not acceptable.

25              MR. CHARDON:  Right.

1        So, your Honor, so you ordered not an inspection, but

2   for Royal Caribbean to use best efforts.

3        THE COURT:  I'm sorry?

4        MR. CHARDON:  Mr. Brais stated that you ordered an

5   inspection.  Your Honor ordered that Royal Caribbean, which is

6   one of many entities doing business with MC Tours, to use best

7   efforts to secure an inspection.

8        We immediately contacted MC Tours.

9        MC Tours says:  I'm going to appoint attorneys in

10  Honduras to deal with this.

11       THE COURT:  Who said that?  Who said that?

12       MR. CHARDON:  MC Tours.

13       THE COURT:  Okay.

14       MR. CHARDON:  MC Tours hired counsel.  They told us:

15  Write to our counsel.

16       We did.  We contacted them.  We explained what

17  happened.  We said:  Look, the Judge ordered us to use best

18  efforts.  What say you?

19       They responded and they say -- objected.

20       Now, what I told to Mr. Brais is that there's never

21  been any parameters set for this inspection.  I told him,

22  especially in light of the order that was entered today, I

23  would gladly go back to them and say:  Look, this is what

24  they're proposing.

25       Mr. Brais is right that we have the, you know, right to

```
 1   go as a secret shopper.  That just means we buy a ticket or we

 2   get a ticket and we go and participate, which we could do if we

 3   wanted to.  But he's proposing, as you pointed out, going there

 4   with an expert, which may or may not involve considerable

 5   testing, going in and out of the zip lines, asking for --

 6        THE COURT:  It seems to me that's perfectly reasonable.

 7   That seems perfectly reasonable.

 8        MR. CHARDON:  Right.  So what --

 9        THE COURT:  It may be that Royal Caribbean could say:

10   If you don't allow this, we're not going to send people to you

11   anymore.

12        MR. CHARDON:  Okay.  That's not where -- well, what I

13   was trying to articulate, your Honor, is that, you know, MC

14   Tours has not received a proposal as to what this is that these

15   entities, this Plaintiff, which is suing them in Florida -- the

16   case was dismissed, but they can still appeal -- what is it

17   that they want to do on their property.  They haven't -- so

18   what I'm suggesting is that Mr. Brais come up with a plan.  I

19   can pass that along to them and urge them again to let us

20   access --

21        THE COURT:  All right, counsel.  What do you suggest?

22   We have a trial date.

23        MR. BRAIS:  Yeah.

24        THE COURT:  We have -- what do you suggest?

25        MR. BRAIS:  Here's what I suggest, Judge:  We're all
```

```
 1    operating under some pretty tough constraints.  The language --

 2    and I want to follow their language -- that "The cruise line at

 3    its discretion at times can in an unannounced fashion arrive at

 4    the zip line" in case, in question, they can appear there in a

 5    secret shopper capacity and conduct, get satisfaction-related

 6    reviews.  Okay.

 7            If MC Tours is notified, tipped off, however you want

 8    to phrase that, that we're coming and we're going to do this,

 9    then MC Tours is going to throw a fit and throw us right off

10    the property.

11            I think that would be inconsistent with the Court's

12    ruling that Royal Caribbean should exercise the --

13            THE COURT:  What do you want Royal Caribbean to do?

14            MR. BRAIS:  We want Royal Caribbean to allow us to meet

15    them at the pier, myself or whomever from my office and my

16    expert, and to participate in the zip line tour and do what is

17    reasonably appropriate to conduct an inspection.  And we

18    don't --

19            THE COURT:  I agree.

20            MR. BRAIS:  -- really want to get kicked off the

21    property.

22            THE COURT:  I agree.  I agree.  And I order it.

23            Okay.  Now what -- I order it.  I think that's

24    perfectly reasonable.

25            MR. BRAIS:  Right.
```

```
 1          THE COURT:  You know, the cruise line sends customers
 2   to the zip line.  And it seems to me that they have an interest
 3   in making sure that either this kind of thing doesn't happen
 4   again or, if it happened, it wasn't their fault.  It wasn't the
 5   fault of the zip line.  They have an inspection like anything
 6   else.
 7          And I think Royal Caribbean's in a position to make it
 8   happen.
 9          MR. BRAIS:  So --
10          THE COURT:  I could order it, you know.  But then what?
11          MR. BRAIS:  Well --
12          THE COURT:  We're going to have tertiary litigation,
13   you know, tertiary litigation about whether Royal Caribbean did
14   what they should have done, is supposed to do or had a right to
15   do or should have a right to do with respect to one of their
16   vendors.
17          MR. BRAIS:  So if we could accompany the Royal
18   Caribbean representative as the secret shopper and if my expert
19   and myself could do what he needs to do, this could be
20   accomplished.
21          THE COURT:  But the secret shopper's got to take the
22   zip line over.
23          MR. CHARDON:  Right.
24          So what I would suggest, your Honor --
25          THE COURT:  You want to do that?  You look like you're
```

```
 1   my age.

 2              (Laughter.)

 3              MR. BRAIS:  I probably am.

 4              THE COURT:  I don't like to be funny, but, boy, there's

 5   some things I wouldn't do for my client.

 6              MR. BRAIS:  I may have to send somebody else, Judge.

 7              MR. CHARDON:  Your Honor, if --

 8              THE COURT:  I've got some people I would send.

 9              MR. BRAIS:  Well, it's not a very safe zip line.  I

10   don't know what you mean by that, Judge.

11              THE COURT:  I have people I would send.

12              (Laughter.)

13              THE COURT:  Counsel?

14              MR. CHARDON:  If I may, I think one possible

15   solution -- and I would not be surprised if MC Tours would

16   agree -- is rather than have a quote-unquote "secret shopper"

17   go and take their zip line, they might open their park when

18   there's no cruise ship passengers or general public

19   participating and allow them to participate with a reasonable

20   amount of time.

21              I can definitely propose that.

22              THE COURT:  I think they should be able to inspect the

23   site in question.  It's as simple as that.  And it's up to

24   Royal Caribbean to make it happen.

25              MR. BRAIS:  So --
```

1        THE COURT:  This is a very simple matter, you know.

2   And for a lot of reasons, Royal Caribbean is obligated to do

3   that.  And I think Royal Caribbean should want to do that.

4        MR. BRAIS:  So that would --

5        THE COURT:  So that's my order.  And I'll leave it to

6   the order.  And the order speaks for itself.  It's clear that

7   the Plaintiff has a right to inspect the location of the

8   accident.  Now, they may want to take -- you know, have

9   somebody go over, get some intern or something to take the zip

10  line over, you know.  But the actual site, that's where the

11  accident occurred.  Okay?

12       Now, the accident may have started at the takeoff

13  point.  I don't know if there's a slack line.  But whatever.

14  They're entitled to examination of the entire zip line,

15  starting point, end point.  They're entitled to that.

16       MR. BRAIS:  Thank you, Judge.

17       THE COURT:  And I'll leave it to you to work out to

18  your -- with your people.  They're actually entitled to that.

19       MR. BRAIS:  So the second issue delaying our response

20  to the motion for summary judgment, which is what we're here

21  about, is that there was an order entered by you, Judge, again,

22  *ore tenus* that we should take the deposition of John Ireland.

23  He is a person in the zip line business who actually conducted

24  two inspections at least, issued various reports, some of which

25  said certain things needed to be rectified and corrected.

```
 1              THE COURT:  He was hired by whom?

 2              MR. BRAIS:  He was hired by the zip line company, I

 3    think, in the course of what --

 4              THE COURT:  And you say that I specifically ordered

 5    that he be deposed?

 6              MR. BRAIS:  I wasn't here, but I am aware that you

 7    ordered his deposition go forward.

 8              Now, he's not connected with any of the parties --

 9              THE COURT:  Counsel, have you been here?

10              MR. CHARDON:  I'm sorry?

11              THE COURT:  Were you here when I did that?

12              MR. CHARDON:  Correct.

13         So Mr. Brais's colleague just said ore tenusly:  We'd

14    like to take the deposition of this person.  Never before

15    mentioned that to us.

16              And your Honor said:  Yeah.  That sounds like a good

17    idea.  Let's make this happen.

18              THE COURT:  Okay.

19              MR. CHARDON:  That was in May 11th.

20              THE COURT:  Right.

21              MR. CHARDON:  No -- well, Mr. Brais's indicated he's

22    tried to contact Mr. Ireland to no avail.  That's been more

23    than two and a half months.  Summary judgment's been filed more

24    than six weeks ago.  Deadline to file pretrial motions, like

25    motions in limine, is in a month.
```

1          No word from Mr. Ireland.  He's an individual which

2   RCCL had no knowledge about.  He inspected this entity pursuant

3   to this particular industry standards, ACCT, which the Eleventh

4   Circuit and --

5          THE COURT:  So what are you saying?  They made a phone

6   call to you saying (inaudible) and that was it?

7          MR. CHARDON:  I'm sorry?

8          THE COURT:  What are you saying?

9          MR. CHARDON:  I'm saying that too much time has passed,

10  and I think that the deposition -- that this gentleman is not

11  cooperative.  It's been more than two months.  And if we

12  allow -- we don't know when he's going to be available.  And I

13  would move to quash that order or seek to --

14         THE COURT:  Well, I'm not going to quash the order, but

15  that's not going to affect any of the -- anything else that's

16  in place.

17         MR. BRAIS:  So we have diligently tried to schedule his

18  deposition.  He notified that he was out of the country.  He

19  notified he was going to be back, I think, in 30 or so days.

20         THE COURT:  Did you serve a subpoena?  Did you do

21  anything?

22         MR. BRAIS:  So when he came back, he didn't show up.

23  We have since issued --

24         THE COURT:  I'm sorry.  Had you noticed a deposition

25  and he failed to appear?

 1          MR. BRAIS:  No, Judge.  The subpoena should have landed

 2    on his desk today or tomorrow.  We're tired of, apparently,

 3    what has been dilatory tactics.

 4          THE COURT:  Well, my order stands.  Your subpoena

 5    stands.  There's nothing before me.  Okay?

 6          MR. BRAIS:  Okay.

 7          MR. CHARDON:  Your Honor, before --

 8          MR. BRAIS:  We'll get his depo out because he's going

 9    to get served now.  We're not going to wait for --

10          MR. CHARDON:  Okay.  I'd just like the record to

11    reflect, I think the subpoena was issued -- we got notified of

12    it today, more than two months after the order was entered.

13    And my only concern is --

14          THE COURT:  It's all there.  My order's there.  The

15    subpoena's there.  And that's the state of the record.

16          MR. CHARDON:  And to the extent it affects other

17    deadlines, your Honor?  Because that's my concern there,

18    because we have -- we have deadlines for pretrial motions in

19    about a month and this will probably affect that.

20          MR. BRAIS:  Well, the subpoena --

21          THE COURT:  We'll cross that bridge when we get to it.

22          MR. BRAIS:  That's what I figured.

23          THE COURT:  And not by zip line.

24          (Laughter.)

25          THE COURT:  Go ahead.

1        MR. BRAIS:  The third issue affecting our timeliness to

2   the respond to the motion for summary judgment is that Judge

3   Moreno issued an order for the continuation of the deposition

4   of RCCL's corporate representative, who at her first deposition

5   appeared and said she doesn't know very much about any priors.

6        And later, when the Defendant was required to produce

7   prior instances of injuries involving the zip line, it turns

8   out -- I don't know if the number is five or six -- minimally,

9   that occurred within a relatively short period of time.

10       So that deposition is going forward.  Now we've reached

11   agreement on that.  That shouldn't hold up things.  I think

12   it's going to be August 8th, so that's good news.  We can get

13   that done.

14       THE COURT:  Okay.

15       MR. BRAIS:  But it is delaying at least presently our

16   response, obviously, on a very important issue.

17       The fourth issue that's material to our ability to

18   respond to the summary judgment is that you likewise -- I

19   apologize, Judge; I don't know if you ordered it or Judge

20   Moreno ordered it; I think you did -- the deposition of the MC

21   Tours employee who we're told has very relevant information.

22   We would like to depose him.

23       The response back from MC Tours, I believe, is that

24   they won't allow us to go there and take the depo, that what

25   they will allow is that we do it either telephonically or by

1   video.  And appreciating you've ordered the zip line tour, we

2   just simply wanted to accomplish two while we're there.  We'd

3   also like to sit across from him as he's answering questions.

4        So that's the fourth item delaying things.

5        I think generically, your Honor, if the Court were to

6   issue the types of orders that you've just indicated and

7   accomplish all within -- best efforts within, you know, 30

8   days, with the cooperation of all concerned, then maybe we

9   don't have to divert from the trial calendar dates that are

10   existing.  I haven't taken a pen to paper or a calculator.

11        THE COURT:  Well, first of all, we all started with, as

12   I recall, the only issue before me was the motion for extension

13   of time to file a response to summary judgment.  Is that

14   correct?

15        MR. BRAIS:  Yes, Judge.

16        THE COURT:  Jeez.  I mean, I forget why we were here.

17        MR. BRAIS:  Yeah.

18        THE COURT:  So with respect to that, let us -- with

19   respect to this deposition, whatever, I expect Royal Caribbean

20   to cooperate in the same sense that you're going to deal with

21   the zip line thing.

22        MR. CHARDON:  Sure.

23        THE COURT:  And the guy should be deposed.  But, you

24   know, if you have to take a video deposition, you do that.  Do

25   you follow me?  Everything's preserved on the record.  Do you

```
 1    follow me?

 2              MR. BRAIS:  Yes, Judge.

 3              THE COURT:  For example, the Eleventh Circuit may come

 4    down.  You may get a great victory and the Eleventh Circuit --

 5    the Defendant may get a great victory and the Eleventh Circuit

 6    may say:  No.  Royal Caribbean should have allowed a live

 7    deposition.  Do you follow me?

 8              So aside from the fairness of it, as a legal -- giving

 9    legal advice to your client, it might be best if you make sure

10    there's a live deposition.

11              MR. CHARDON:  Understood.

12              THE COURT:  I'm just saying.  You know what I mean?

13              MR. CHARDON:  Understood, Judge.

14              THE COURT:  Now, let's get back to the extension of

15    time.  Okay?  Given the trial date in this case, any additional

16    discovery or whatever that needs to be done, realistically, how

17    much time do you need, bearing in mind they have to file a

18    reply; they may need oral argument on this?  I guess summary

19    judgment --

20              MR. BRAIS:  Judge, to accomplish the four things that I

21    just mentioned --

22              THE COURT:  Was the summary judgment referred to me?

23              MR. CHARDON:  Yes.

24              THE COURT:  Okay.  Go ahead.

25              MR. BRAIS:  To accomplish the four things that I just
```

```
1    mentioned, to respond, the absolute quickest I think we could

2    do it is three weeks; probably to be safe it would be four

3    weeks, just with the scheduling and the travel and the extra to

4    go there --

5              THE COURT:  Sure.

6              MR. BRAIS:  -- and, you know, that sort of thing.

7              So if the Court were inclined that those four reasons

8    are meritorious in making it pretty much impossible for the

9    Plaintiff to respond to the summary judgment at this point, the

10   Court could enter an order consistent allowing for an

11   additional 30 days to accomplish the multiple items said and

12   best efforts to be accomplished, because I don't know what else

13   to do at this point.

14             MR. CHARDON:  Your Honor, may I interject something?

15             Mr. Brais is presumably going to the inspection with

16   his expert.  Presumably, the expert is going to modify his

17   opinions.  We are entitled to know those opinions.  We would

18   need to take his deposition.  That would factor into the amount

19   of time.

20             MR. BRAIS:  No problem.

21             MR. CHARDON:  Our expert would be entitled to prepare a

22   report in rebuttal of those opinions.  There were staggered

23   deadlines for rebuttal reports.

24             So that's just another, you know, consideration.

25             MR. BRAIS:  Completely understandable.
```

1          THE COURT:  Again, again, the only problem I have is

2     that there's a trial date set by Judge Moreno.  Do you follow

3     me?  And that's there.  Do you follow me?  And so we're really

4     going to have to scramble to get everything done, including the

5     summary judgment and response and the reply.

6          I don't know.  I probably want to have oral argument.

7     I'm not -- do you understand me?  And then we have to write an

8     opinion.

9          So with that in mind, I will give you 30 days.  Okay?

10    And you have an extension of 30 days, ending at the close of

11    business on -- Yvette?

12         THE LAW CLERK:  August 25th.

13         THE COURT:  August 25th, 2017, at 5:00 p.m.  You have

14    an extension until that date.

15         So your motion for enlargement of time to file a

16    response is granted to that extent.

17         I'm in complete sympathy with your situation, both of

18    you, in which you're at.  You know?  I'm doing the best I can

19    to be fair and be reasonable.  But my -- with respect that my

20    orders pertaining to any other matters on the motion for

21    extension and compliance shall be forthwith.

22         MR. BRAIS:  Thank you, Judge.

23         THE COURT:  Do you understand that?

24         MR. CHARDON:  Okay.

25         THE COURT:  Maria, is there anything else?

```
 1              THE COURTROOM DEPUTY:  No.  That's it.

 2              THE COURT:  Counsel, anything else?

 3              MR. CHARDON:  Just for the -- because there's going to

 4    be other deadlines that might be impacted --

 5              THE COURT:  Other what?

 6              MR. CHARDON:  Other deadlines.  We have a deadline on

 7    the 30th of the month to file pretrial motions, and the content

 8    of the testimony of Mr. Brais's expert might need to be

 9    addressed in those motions.  So I just want to note on the

10    record that we may need to request additional time to file

11    those motions.

12              THE COURT:  And that would be before Judge Moreno.

13    Correct?

14              MR. CHARDON:  I would assume so.

15              THE COURT:  It's noted in the record.  I certainly

16    understand.

17              Thank you both very much.

18              MR. BRAIS:  Thank you, your Honor.

19              MR. CHARDON:  Thank you, Judge.

20              (Proceedings concluded.)

21

22

23

24

25
```

1

2                            C E R T I F I C A T E

3          I hereby certify that the foregoing is an

4    accurate transcription of the proceedings in the

5    above-entitled matter to the best of my ability.

6

7
                                /s/Lisa Edwards
8    _____             LISA EDWARDS, RDR, CRR
        DATE                    Official Court Reporter
9                               United States District Court
                                400 North Miami Avenue, Twelfth Floor
10                              Miami, Florida 33128
                                (305) 523-5499
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25