UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 16-23775-CV-MORENO/TURNOFF

ALYDA R. CHIMENE,

    Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES, LTD.,
et al.,

    Defendants.
_____/

## **REPORT AND RECOMMENDATION**

**THIS CAUSE** is before the Court upon Defendant Royal Caribbean Cruises, Ltd., et al ("RCCL") Motion for Summary Judgment **(ECF No. 98)**, and a prior Order of Referral entered by Honorable Federico A. Moreno. **(ECF No. 110)**. A hearing on this Motion took place before the undersigned on October 5, 2017. Upon review of the Motion, the Response, the Reply, hearing argument from counsel, and being otherwise duly advised in the premises, the undersigned makes the following findings.

### **Background**

This action was originally filed on September 1, 2016. **(ECF No. 1)**. An Amended Complaint was filed on October 17, 2016. **(ECF No. 14)**. The Amended Complaint alleges, among other things, negligence and breach of duty in connection with injuries sustained by Plaintiff, Alyda Chimene ("Plaintiff") while she was participating in a zip line shore excursion promoted, advertised, and sold by RCCL. Id. The operator of the zip line was MC Tours, a Honduran entity. Plaintiff originally sued

RCCL, and MC Tours.[1] Id. However, on February 5, 2017, MC Tours was dismissed for lack of personal jurisdiction. **(ECF No. 67)**.

Plaintiff's specific claims are: (1) Negligence-Failure to Warn; (2) Negligent Selection and Retention; (3) Apparent Agency; and (4) Joint Venture. By way of summary, Plaintiff alleges that RCCL advertised that the "Caribe Zip Line" could sustain a maximum of 320 pounds, which is why, as a 250-pound woman, she chose that excursion. **(ECF No. 1, 14)**. According to Plaintiff, she was zip lining on the first traverse when the incident occurred. Id. In doing so, she crossed her legs and lifted them as high as she could in accordance with the safety briefing. Id. However, she claims that she was unable to apply the brakes. Id. She also claims that because there was too much slack on the line, when she reached the unpadded landing platform, she violently struck her legs onto same. **(ECF No. 1, 14)**. The impact with the platform caused severe injuries and ripped the skin off of her lower legs leaving bone, tendons and muscle exposed. Id.

## Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility to inform the court of the basis for its motion and identify the portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Thereafter, to overcome summary judgment, the nonmovant must "go beyond the pleadings" and set forth "specific" material facts that remain in dispute. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and

---

[1]Two other foreign entities, i.e., Grupo Palmas and Caribe Sky Canopy Tour, were also named as Defendants in this action. **(ECF No. 1)**. However, the record shows no proof that either entity was been served.

2

determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. In so doing, the Court should view all evidence and make all justifiable inferences in favor of the non-moving party. Id. at 255.

## RCCL's Motion for Summary Judgment

In its Motion, RCCL argues that summary judgment is appropriate because: (1) Plaintiff has failed to demonstrate that a dangerous condition existed on the subject traverse or that it proximately caused her incident; (2) The record is devoid of evidence that MC Tours was unfit or incompetent; (3) Plaintiff cannot show apparent agency, because disclaimers placed her on notice that: (a) RCCL was not the owner/operator of the excursion; (b) All excursions were owned and operated by independent contractors; (c) Royal Caribbean would not be responsible for the negligent acts of third parties; and (4) Plaintiff has shown no evidence indicating that RCCL had a joint proprietary interest in MC Tours. **(ECF No. 98)**.

## Analysis

Federal maritime law governs the liability of a cruise ship for injuries sustained by its passengers.[2] Everett v. Carnival Cruise Lines, 912 F.2d 1355, 1358 (11th Cir.1990). However, a carrier by sea does not serve as an insurer to its passengers. Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1334 (11th Cir.1984). Instead, it is liable only for its negligence. Id.; see also, Weiner v. Carnival Cruise Lines, No. 11-CV-22516, 2012 WL 5199604, at *2 (S.D.Fla. Oct. 22, 2012). Stated differently, the owner of a ship in navigable waters owes passengers a duty of "reasonable care" under the circumstances. Sorrels v. NCL, Ltd., 796 F.3d 1275, 1279 (11th Cir. 2015). These same principles extend to torts that occur on offshore excursions during the cruise. Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 901 (11th Cir. 2004); see also Isbell v. Carnival Corp., 462 F. Supp. 2d 1232 (S.D. Fla. 2006). RCCL's arguments shall be addressed below.

---

[2]In the absence of applicable maritime law, the court may apply the reasoning used by other federal circuits. Isbell v. Carnival Corp., 462 F. Supp. 2d 1232 (S.D. Fla. 2006)(citing Carlisle v. Ulysees Line Ltd., S.A., 475 So. 2d 248, 250 (Fla. 3d DCA 1985)).

3

*(1) Was RCCL on Notice that a Dangerous Condition Existed?*

In order to prevail on her negligence claim, Plaintiff must show that: (1) RCCL owed her a duty; (2) that RCCL breached that duty; (3) that this duty was the proximate cause of her injury; and that (4) that Plaintiff suffered damages. Isbell v. Carnival Corp., 462 F. Supp. 2d at 1236. The failure to show sufficient evidence of each element is fatal. Id. at 1237; see also, Taiariol v. MSC Crociere, S.A, No. 5-61131, 2016 WL 1428942, at *3 (S.D. Fla. Apr. 12, 2016).

As a prerequisite to imposing liability, however, "[the] carrier [must] have had actual or constructive notice of the risk creating condition." Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1322 (11th Cir.1989). In this connection, the duty to warn passengers of dangers extends only to "those dangers which are not apparent and obvious." Luby v. Carnival Cruise Lines, Inc., 633 F. Supp. 40 (S.D. Fla. 1986); see also, Smolnikar v. Royal Caribbean Cruises, Ltd., 787 F. Supp. 2d 1308, 1323 (S.D. Fla. 2011). In other words, RCCL's liability turns on whether it had notice of the alleged condition. In making his/her case, a plaintiff must demonstrate evidence of conditions *substantially similar* to the occurrence in question. Taiariol, 2016 WL 1428942 at *5.

Here, RCCL argues that Plaintiff must show that RCCL knew of prior incidents/safety concerns involving this particular section of the zip line and the "slack in the line" specifically alleged here. **(ECF No. 98)**. Specifically, RCCL claims that this particular zip line has had over 10,000 participants since it was first offered to its passengers. Id. Of all of the participants, only two reported an incident with the first traverse. Id. RCCL further notes that all reporting participants, except Ms. Chimene, were able to complete the tour. Id. In its view, these incidents are insufficient to provide notice to RCCL that a hidden condition existed as to this traverse and/or that additional warnings were needed. Id.

Evidence of a repetitive condition may impute constructive notice, but a plaintiff must do more than rely "on some generalized theory of foreseeability that is divorced from the particular events in question." Weiner v. Carnival Cruise Lines, 2012 U.S. Dist. LEXIS 151395, at *12 (S.D. Fla. Oct. 22, 2012). Instead, he/she must be able to point to specific factual evidence which demonstrates that the

4

defendant should have known of the condition. Id. Notice can take many forms. For example, notice can take the form of accident reports, passenger comment cards or reviews, and/or safety inspection reports. See Cohen v. Carnival Corp., 945 F. Supp. 2d 1351 (S.D. Fla. 2013)(granting summary judgment where Plaintiff showed no evidence that cruise line had actual or constructive notice of conditions created by steps at the end of a gangplank); see also, Smolnikar v. Royal Caribbean Cruises, Ltd., 787 F. Supp. 2d 1308, 1323-24 (S.D. Fla.2011)(finding that the cruise line had no actual or constructive notice of any risk creating condition from zip line operator where there were no accident reports or passenger comment forms alerting of potential dangers at the subject traverse).

Typically, summary judgment is appropriate were there exists no record evidence of safety concerns or reports of injuries caused by safety concerns. See, Wolf v. Celebrity Cruise, Inc.,³ 683 Fed. Appx. 786, 794 (11th Cir. 2017)(granting summary judgment in the absence of affirmative evidence of safety issues or reports of injuries); see also, Taiariol v. MSC Crociere, S.A., 2017 WL 382316, at * 2 (11th Cir. Jan. 27, 2017)(mere implication of actual or constructive notice without more is insufficient to survive summary judgment). For example, in Smolnikar v. Royal Caribbean Cruise, Ltd., another zip line negligence case,⁴ this court entered summary judgment in favor of RCCL after finding that,

> [RCCL] had positive information about [the operator], and there [was] no evidence that [it] received any form of notice regarding the existence of an alleged danger, as there were no accident reports from [the operator] or passenger comment forms or reviews, alerting [it] as to a potential safety concern at traverse #6 of the tour.

Smolnikar v. Royal Caribbean Cruises, Ltd., 787 F. Supp. 2d. 1308, 1323 (S.D. Fla. 2011).

By contrast, this court recently rejected the notion, by this same Defendant, that a mere five incidents out of 218,400 passengers was insufficient to provide notice. McDonnell v. Royal Caribbean Cruises, Ltd., Case No: 16:cv-22044-RNS, **(ECF No. 76)**. In McDonnell, the plaintiff claimed to

---

³The Wolf case also involved injuries sustained while the plaintiff was participating in a zip line tour operated by The Original Canopy Tour in Costa Rica. Wolf, 683 Fed. Appx. at 786.

⁴The zip line in this case was operated by Chuka's Montego Bay in Jamaica. Smoknikar v. Royal Caribbean Cruises, Ltd., 787 F. Supp. 2d. 1308, 1310 (S.D. Fla. 2011).

5

have fallen on a step in an auditorium. In denying RCCL's motion for summary judgment, the Court relied on, among other things, findings by plaintiff's expert which concluded that the stairs at issue were steeper than what was permitted by industry standards. Id. The expert had also found that the variation between steps leading to the floor was excessive, and that the absence of a handrail also violated industry standards. Id.

Applying these cases to the facts at hand, and viewing the evidence in this case in the light most favorable to Plaintiff, the undersigned finds that Plaintiff has established the existence of genuine issues of material fact as to notice.

Here, Plaintiff has uncovered evidence of ten (10) incidents involving twelve (12) persons on the subject zip line. Granted, only three of those incidents occurred on the same traverse as Plaintiff's incident. However, the circumstances raised substantially similar issues, i.e., velocity, trouble braking or stopping, and consequently crashing into the platforms or other objects. Examples of the incidents are listed below in no particular order.

*Karen Schexnayder*

This incident was reported in May 2015 to RCCL *via* a Guest Injury Statement. **(ECF No. 97-19)**. The passenger reported that she was coming in too fast and was unable to brake. This caused her to turn. Because she was unable to pick up her legs, she hit them on the landing. She sustained bruising on the back of her legs and ankles. Id. This is reflected in communications between MC Tours and RCCL. Specifically, RCCL reached out to MC Tours and inquired about this incident. Apparently, this passenger claimed that "she had an accident [where] she got hurt," and "no one even asked her [for her] name." **(ECF No. 97-20)**. In the email, Anael Cabrera, RCCL's Shore Excursion Manager, requested the incident report for the ship's onboard records. Id. In response, Penny Zeilman of MC Tours stated as follows:

> During the <u>first zip-line</u>, this passenger was coming very fast, she let go [of] her hand from the brake... and so she started to spin losing control [of] her brake.

\* \* \*

> When she arrived at the next platform, [the] park guide stopped her, but she
> was[going] very fast and accidentally hit her legs slightly [on] the platform [sic].
> One leg [had] a superficial scratch and the other one [had] a bruise.

**(ECF No. 97-20)**. (emphasis in original).

*Susan Stewart*

This 2015 incident occurred on the first traverse. It was the subject of an email inquiry from Miguel Martinez of RCCL to Arianna Polenghi of MC Tours. **(ECF No. 129-11)**. Apparently, RCCL became aware of the incident because the guest lodged a claim with its legal department. However, RCCL had not received any report or documentation from MC Tours. Id. In response to the inquiry, MC Tours stated,

> [Stewart] left her hands [sic] while zipping and as a result she got a bruise on her
> arm when she tried to grab the brake line back. It happened in the beginning of the
> tour, in the first or second line....

Id.

*Shannon Laza and Family*

Laza and her family participated in the subject zip line tour on, or about, January 2014. **(ECF No. 129-15)**. She reported her complaints/incidents as to the third or fourth traverse *via* RCCL's comment card. She described that her daughters and her mother crashed into another group while on the zipline. Apparently, a group became stuck and remained stuck, because there was no communication between platforms. One of her children, aged 11, began to panic and cry. She describes that the weight of the group caused the cable to sag and drop and placed them several feet lower into the trees. At one point, her mother's hand was stuck in the trees. She states that one of her children, aged 15, was so bruised that she could hardly move. Id. Her mother had pain in her hand. She also reported seeing a woman who suffered a bloody lip due to having hit a tree during the drop/sag. Id.

*Karen Laza*

Karen's incident was described *supra*. She is Shannon's mother. She testified at deposition that her daughter's recitation of the facts in the comment card (and on TripAdvisor) was accurate,

7

including but not limited to the cable being so weighed down that the group was not visible. Because of this, it took over half an hour for the operators to notice that the group was stuck. K. Laza Dep. 55:17-60:5 **(ECF No. 129-22)**.

*Gayla Blakley*

She reported problems with the fourth or fifth zip line in September 2014 to RCCL *via* comment card. She stated that the guide who took her and her husband down the zip line could not stop. Because of this, they hit the platform at a high rate of speed. Her husband hit the platform with such force that his laced running shoe flew off. He injured his leg/calf. **(ECF No. 129-23)**.

*Kathy Rindhage*

This incident occurred on the sixth traverse. It was reported to RCCL by MC Tours in November 2014. Rindhage stated that she was unable to brake properly which led to her feet hanging too low. As a result, the guide was not able to stop her and she scratched both of her legs. **(ECF No. 129-12)**.

*Laura Arends*

This incident was reported to RCCL by Arends *via* a Guest Injury Statement. The incident occurred on the first traverse of the subject zip line. **(ECF No. 129-10)**. Specifically, she reported that her "brake hand" bounced off of the zip line and she could not reposition it. This caused her to spin/turn. As a result, her right leg hit the platform and her right arm hit a tree. Id.

*Brenda Lee Marty Jimenez*

This incident was reported by Jimenez, on December 29, 2014, by way of a Guest Injury Statement. **(ECF No. 129-24)**. She reported that her daughter's braking glove was not working. Because of this, she "went flying into the zip line stop." Id. She then switched gloves with her daughter and it likewise failed. She reported injuries to her right shoulder as a result of the glove's failure. In her view, the incident was caused by "faulty/no brake on zip line glove." Id.

In January 2015, Arianna Polenghi from MC Tours emailed RCCL regarding this incident. She reported that "the velocity [at which] the passengers arrive depends on many factors: weight of the

passenger, how much the passenger [brakes], if it is raining, etc. . . . ." **(ECF No. 129-25)**. In this email, Polenghi concedes that it is the guide's responsibility to stop passengers if they are arriving to quickly. Id.

*Leigh Ann McClure*

On June 11, 2015, McClure filled out a Guest Injury Statement. Her statement reports that she sustained an injury on platform number thirteen of the subject zip line. She reported that "the emergency brake was not pulled [by the guide] and [she] slammed into a tree at the end of the line." **(ECF No. 129-26)**. In this connection, she further states that the receiving guide was busy assisting other riders and was not ready to receive her, so he "did not stop her." Id.

*Jesse McMillin*

According to Plaintiff, she learned of the McMillin incident *via* TripAdvisor,[5] because MC Tours did not report it to RCCL. **(ECF No. 128)**. McMillin was deposed in this case. McMillin Dep. **(ECF No. 129-27)**. He testified that he casually reported his incident to RCCL's Guest Services once he returned to the ship, but did not file an official report. Id. at 41:1-44:3. This incident occurred on the third or fourth traverse to RCCL. Id. at 69:2-3. He testified that while approaching the receiving platform with his family, the receiving guide was still unharnessing another group and was not prepared for them. Id. at 23:25-25:1. Because of this, his son, who was riding in the front, hit the guide and the momentum pushed them into the three other people in front of them. Everyone else was pushed into a tree. Id. at 67:17-68:7. A similar incident took place with the group behind them. Id. at 23:25-25:1.

At first glance, the number of incidents may seem diminimus, i.e., ten incidents involving twelve people out of 10,100. However, as correctly noted by Plaintiff, if you look at the twenty months prior to the incident at hand, you have approximately one person complaining about this operation about every other month. These incidents show, at a minimum, that there were problems with, among

---

[5]The undersigned recognizes that TripAdvisor is not operated by RCCL.

9

other things, slacking in the zip line, weight, braking, and guides being unable to stop passengers when they arrived at the platform.

Upon review, the undersigned agrees with the reasoning in McDonnell[6] and finds that the number of incidents themselves are not necessarily dispositive. Consistent with the above, Plaintiff has sufficiently raised genuine disputes of material fact so as to preclude the entry of summary judgment on this issue.

2) *Was RCCL Negligent in Selecting and/or Retaining MC Tours?*

As noted above, Plaintiff claims that RCCL was negligent in selecting and retaining MC Tours. As a general matter, it is well established that cruise lines cannot be held vicariously liable for the negligence of an independent contractor. They can, however, be liable for the negligent hiring or retention of same. Smolnikar v. Royal Caribbean Cruises, Ltd.,787 F. Supp. 2d 1308, 1323 (S.D. Fla.2011)(citing In re Central Gulf Lines, Inc., 176 F. Supp. 2d 599 (E.D. La. 2001)). Here, the parties agree that in order to establish this claim, Plaintiff must demonstrate that: (1) the contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness and that (3) the incompetence or unfitness was a proximate cause of Plaintiff's injuries. Wolf v. Celebrity Cruises, Inc., 683 Fed. Appx. 786 (11th Cir. 2017)(citing Davies v. Commercial Metals Co., 46 So.3d 71, 74 (Fla. 5th DCA 2010). Of course, with respect to selection, liability is premised on inadequate background research or investigation. Smolnikar 787 F. Supp. 2d at 1318 n.7 (citing Garcia v. Duffy, 492 So. 2d 435 (Fla. 2d DCA 1986)). With respect to retention, liability is based upon a whether, during the course of the contractor's work, the principal becomes aware, or should have become aware, of the contractor's lack of fitness and failed to investigate or terminate said contractor. Id.

*Selection/Retention*

Here, there is evidence and deposition testimony as to the vetting process for shore excursion

---

[6]The McDonnell court likewise noted certain findings by the expert in that case.

10

contractors. Specifically, Amanda Campos, RCCL's Senior Manager of Guest Claims and Litigation testified that RCCL follows a certain process for selecting shore excursions. She testified as follows:

> So, if a cruise line is going to call in a new port of call... it will [advise] the government and [the] local area. And anybody who would like to have a tour there or offer the tour to [RCCL's] guest(s), will be presented with an RFP, which is a Request for Proposal. Those RFPs are submitted to [RCCL and are] reviewed, and then [RCCL] will chose which ones it wants to do business with.

Campos Dep. 46:4-14. **(ECF No. 97-2)**.

Typically, when RCCL begins using a new operator, they are started off with softer tours, i.e., a beach walking tour, as opposed to a more strenuous tour. Id. at 47:1-25. Here, Campos testified that RCCL had been doing business with MC Tours for approximately ten years–even before the instant zip line tour was offered. Id. at 46:22-25. The original tour operators had gone through the RFP process and submitted another one for the zip line tour which was first offered in 2012.Id. at 47:1-25. Campos testified that the RFP is a multi-part document that consists of, among other things, showing proof of insurance and creditworthiness. Id. at 49:15-52:24,56:24-57:11, 64:12-21, 78:11-24. With respect to insurance, prospective contractors must be insured with an insurance underwriter that is approved by RCCL Campos Dep. 52-54. RCCL requires an "AM" rating or better, as well as ceratin policy limits. Id. Insurance serves as a "check and balance" system in this process. Id. at 84. In other words, prospective vendors would be unable to obtain insurance with top rated underwriters if they had a bad safety record. RCCL further requires disclosures as to the contractor's safety records, including any prior incidents or safety concerns. Id. at 77-79. The process also requires disclosure of all certifications and accreditations maintained by the contractor. Id. Here, MC Tours was ACCT[7] rated. Id. at 78. In addition, RCCL sends shore excursion representatives to inspect the facility itself. Id. at 120:6-24. Record evidence also shows that once a contractor is selected, RCCL conducts random unannounced visits to conduct guest satisfaction related reviews. Loughrin Dep. 87:21-25; 88:1-20. While there, they will check the facility for, among other things, cleanliness, how it operates, how

---

[7]ACCT is the Association for Challenge Course Technology ACCT. The ACCT is an accrediting body that drafts, among other things, the standards for the challenge courses industry.

11

guests are getting through, and overall guest satisfaction. Id.

After approval, contractors must continue the process by reporting incidents and safety concerns. Further, these contractors must resubmit themselves to the RFP process every year. Id. at 61:10-62:7. If RCCL is satisfied with the RFP, the contractor's agreement is resigned/renewed. Id. Here, RCCL contends that it chose MC Tours based on its good reputation, experience, expertise and safety record. Campos Dep. 77:22-78:10, 118. Consistent with the above, as well as other testimony and evidence of record, the undersigned finds that RCCL was not negligent in the selection of MC Tours.

However, the same cannot be said on the issue of retention. Here, as reflected in the incidents summarized above, Plaintiff has raised sufficient genuine issues of material fact to survive summary judgment as to the retention of MC Tours. Unlike the Wolf and Smolikar cases, the record herein most certainly contains evidence that should have alerted RCCL to inquire further as to the competency of the operator. See e.g., Smolnikar 787 F. Supp. 2d 1308 (S.D. Fla. 2011) (finding no evidence of other alleged accidents taking place on the zip line tour, or of any guest complaints of the safety of the tour that would have prompted RCCL to inquire further or inspect the operation).

It also bears noting in passing that MC Tours hired Absolutely Experiential, Inc./John Ireland,[8] to inspect the subject zip line in November 2013 – approximately two years before this incident. **(ECF No. 129-14)**. At that time, Ireland reported, among other things, that there were several platforms on which a heavier person would potentially hit their legs if not properly lifted. In the report, he recommended appropriate padding in order to provide a buffer for any potential impact. All other findings are of record. In this connection, RCCL's own Safety Quality Management (SQM) policies required it to consistently monitor providers such as MC Tours. **(ECF No. 129-20)**. The question becomes whether RCCL was monitoring MC Tours closely enough.

Viewing these matters, in the light most favorable to Plaintiff, the undersigned finds that she

---

[8]Mr. Ireland is accredited by the ACCT.

12

has raised sufficient material issues of fact to avoid summary judgment.

### (3) Was MC Tours RCCL's Apparent Agent?

As a general matter, maritime law recognizes the principles of agency. See Archer v. Trans/American Services, Ltd., 834 F.2d 1570, 1573 (11th Cir. 1988). In order to establish an agency relationship, Plaintiff must show that: (1) RCCL made some manifestation that caused her to believe that MC tours had the authority to act for the benefit of RCCL, (2) that such belief was reasonable, and that (3) she reasonably acted on such belief to her detriment. Warren v. Ajax Navigation Corp. of Monrovia, 1995 WL 688421, at *2 (S.D. Fla. Feb. 3, 1995), *abrogated on other grounds by*, Franza v. Royal Caribbean Cruises, Ltd., 772 F.3d 1225 (11th Cir. 2014).

Here, RCCL argues that summary judgment is appropriate on this issue because disclaimers placed Plaintiff on notice that: (a) RCCL was not the owner/operator of the excursion; (b) All excursions were owned and operated by independent contractors; and that (c) Royal Caribbean would not be responsible for the negligent acts of third parties. Plaintiff, on the other hand, argues that RCCL made statements in its marketing materials that led her to reasonably believe that the tour operators were authorized to act for RCCL's benefits. In her view, RCCL's statements about partnering with tour operators "injected confusion and ambiguity such that a jury could conclude that Plaintiff's belief that the tour operator was an agent of RCCL [was] reasonable under the circumstances." **(ECF No. 128)**. The undersigned disagrees.

The Wolf decision, cited *supra*, dealt with the issue of agency *vis-a-vis* disclaimers and is instructive. In Wolf, like here, the plaintiff was presented with various disclaimers that expressly stated, among other things, that the excursion operators were independent contractors and not agents or representatives of the cruise line. Wolf, 683 Fed. Appx. at 798. There, the Court rejected the plaintiff's arguments, finding instead that her beliefs were unreasonable in light of the disclaimers. Id. Similarly, in Smolnikar, this Court rejected identical agency claims where the plaintiff had been provided with four (4) separate disclaimers that indicated that the offshore excursion operators were independent contractors and not agents or representatives of RCCL. See Smolnikar v. Royal Caribbean

13

Cruises Ltd., 787 F. Supp. 2d 1308, 1325 (S.D. Fla. 2011).

Here, Plaintiff was presented with three (3) disclaimers–four (4) counting the one by MC Tours. These disclaimers likewise placed Plaintiff on notice that RCCL did not own or operate the shore excursions, that all shore excursions were owned and operated by independent contractors, and that RCCL would not be responsible for any negligent acts or omissions of independent contractors. **(ECF No. 97-8); (ECF No. 97-9)**. To illustrate, the Cruise/Cruisetour Ticket contract states in relevant part,

> SHORE EXCURSIONS, TOURS, FACILITIES, OR OTHER TRANSPORTATION:
>
> All arrangements made for or by Passengers] for transportation (other than on the Vessel) before, during or after the Cruise or CruiseTour of any kind whatsoever, as well as air arrangements, shore excursions, tours, hotels, restaurants, attractions and other similar activities or services, including all related conveyances, products or facilities, are made solely for Passenger's convenience and are at Passenger's risk. These providers, owners and operators of such services, conveyances, products and facilities are independent contractors and are not acting as agents or representatives of [RCCL]. Even though [RCCL] may collect a fee for, or otherwise profit from, making such arrangements and offers for sale shore excursions, tours, hotels, restaurants attractions, the Land Tour and other similar activities or services taking place off the Vessel for a profit, it does not undertake to supervise or control such independent contractors or their employees, nor maintain their conveyances or facilities, and makes no representation, whether express or implied, regarding their suitability or safety. In no event shall [RCCL] be liable for any loss, delay, disappointment, damage, injury, death or other harm whatsoever to Passenger which occurs on or off the Vessel or the Transport as a result of any acts, omissions or negligence of any independent contractors.

RCCL Mot. Ex. D, at 5 ¶ 5, **(ECF No. 97-4)**.

Further, RCCL's booklet/brochure, which is available on its website, states in part, "Shore excursions are operated by independent third parties, [RCCL] has no responsibility for the performance of the Shore Excursions herein identified." RCCL Mot. Ex. F, at 107, **(ECF No. 97-6)**. Along these same lines, the section of the booklet entitled "Legal Responsibilities" states as follows:

> [RCCL] offers shore excursions for guests' convenience and peace of mind. Although we have carefully selected the finest excursions at each port, services are provided by independent tour contractors. [RCCL] will not be responsible or liable for any loss, damage, injury, costs or delays resulting from or in conjunction with your use of these services.

Id.

14

Plaintiff's ticket for the excursion contains similar disclaiming language. See Extreme Caribe Zip Line Tour Ticket. **(ECF No. 97-7)**. Similarly, Plaintiff signed a liability waiver that by its own title, i.e., **"Caribe Sky–Canopy Tour. Operated by MC Tours, Roatan, Honduras"** indicates that the tour was operated by MC Tours and not RCCL. **(ECF No. 97-8)**(emphasis in original).

Applying the case law to the facts of this case, the undersigned finds that there is no genuine issue of material facts as to the non-existence of an agency relationship between RCCL and MC Tours. Accordingly, it is respectfully recommenced that RCCL's Motion on this issue be **GRANTED.**

*(4) Did RCCL have a Joint Proprietary Interest in MC Tours?*

To establish a joint venture claim, a plaintiff must show: (1) the intention of the parties to create a joint venture; (2) joint control or right of control; (3) joint proprietary interest in the subject matter of the joint venture; (4) the right of all venturers to share in the profits; and (5) the duty of both to share in the losses. Hung Kang Huang v. Carnival Corp., 909 F. Supp. 2d 1356, 1361 (S.D. Fla. 2012) (citing Skeen v. Carnival Corp., No. 08–22618–CIV, 2009 WL 1117432, at *3 (S.D. Fla. Apr. 24, 2009)).

As reflected above, RCCL contends that the subject excursion was owned and operated by MC Tours. **(ECF No. 98)**. Through discovery and deposition testimony, RCCL has set forth evidence showing that it had no role in the ownership, management or operation of the excursion at hand. See e.g., Campos Dep. 126:8-11. ("We don't own or operate these shore excursions. If we determined shore side that they don't meet our expectations, we just won't use them any more."); **(ECF No. 97-2)**; see also Bacon Dep. 121:20-123:7, **(ECF No. 97-10)** (testifying that MC Tours is a vendor/independent contractor and that RCCL does not run the excursions).

Further, the Tour Operator Agreement between RCCL and MC Tours clearly describes their relationship as follows:

Section 9. Relationship of Parties

Operator's[9] relationship with Cruise Line during the term of this agreement shall be that of an Independent Contractor. Operator shall not have, and shall not represent that it

---

[9]The Operator is listed on the face of the document as MC Tours. **(ECF No. 97-11)**.

15

has, any power, right or authority to bind Cruise Line or to assume or create any obligation or responsibility, express or implied, on behalf of the Cruise Line or in the Cruise Line's name. The terms herein shall not be deemed exclusive to Operator and nothing related in this agreement shall be construed as constituting Operator and Cruise Line as partners, or as treating the relationships of employer and employee, franchiser and franchisee, master and servant or principal and agent or joint venture between the parties hereto.

RCCL Mot. Ex. K at ¶ 9, **(ECF No. 97-11)**.

In Wolf, the Court examined a similar agreement and found that same failed "to create a joint right of control because it vested control exclusively in the [operator]." Wolf v. Celebrity Cruises, Inc., 683 Fed. Appx. at 798; see also, Zapata v. Royal Caribbean Cruises, Ltd., No.12-21897-CIV, 2013 WL 1296298, at *6 (S.D. Fla. Mar. 27, 2013)(dismissing joint venture claim in light of unambiguous language in Tour Operator Agreement ).

Here, in addition to the Tour Operator Agreement, RCCL's corporate representatives and MC Tours representatives testified that RCCL and MC Tours never shared profits, losses or assets and never intended to create a joint venture. See, e.g., Campos Dep. 234-235, **(ECF No. 97-2)**; Bacon Dep. 107-08, **(ECF No. 97-10)**; Polenghi[10] Dep. 133:1-13, **(ECF No. 97-16)**. Specifically, Campos testified that RCCL has never had any ownership interest in any property owned by MC Tours. Campos Dep. 235:3-5. Likewise, RCCL has never had the power to control MC Tours, or hire or fire its employees. Id. at 235:14-17; see also, Polenghi Dep. 133:22-134:2. RCCL simply generates income on these excursion by charging passengers a certain price per ticket. Loughrin Dep. 261:19-22, **(ECF No. 97-3)**. Thereafter, RCCL pays MC Tours a contractually agreed upon price per tickets sold. Loughrin 261:19-22; Polenghi 132:25-133:10.

Upon careful review of this record, the undersigned finds that RCCL has met its burden, and that Plaintiff's claim of joint venture likewise fails.

## Recommendation

Accordingly, it is hereby **RESPECTFULLY RECOMMENDED** that RCCL's Motion

---

[10]Arianna Polenghi testified as the corporate representative for MC Tours prior to its dismissal for lack of personal jurisdiction.

**(ECF No. 98)** be **GRANTED-IN-PART AND DENIED-IN-PART.**

Pursuant to S.D. Fla. Magistrate Rule 4(b), the parties may serve and file written objections to this Recommendation with the Honorable Federico A. Moreno, United States District Judge for the Southern District of Florida, within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file timely objections shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144 (11th Cir. 1993); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida, this  14th  day of November 2017.

*[signature]*

**WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**

cc: Hon. Federico A. Moreno
Counsel of Record